Judge Lane
delivered the opinion of the court:
Nathaniel Massie was the proprietor of survey No. 2,462, entered January 9, 1795.
In the same year, he contracted to sell one hundred and eighty-eight acres of this land to H. Montgomery, who entered, claiming this title and died in possession, 1802; these are the tenements in dispute.
November 18,1805, Massie, by a deed containing a covenant of general warranty, but executed in the presence of one witness only, conveyed these lands to the heirs of Montgomery. This deed, after giving boundaries, describes the land'as “part of a survey patented to N. Massie.”
November 16, 1811, the heirs of Montgomery, and grantees of the above deed, conveyed the same lands to Joseph Kerr. *This deed is well executed, in the presence of two witnesses, with warranty; and contains the recital, “ that it was part of sur *178 vey No.-, patented to Nathaniel Massie, and by him. conveyed to them,” the heirs of Montgomery.
Under this deed, Kerr took possession. August 30,1813, Hughey recovered judgment against him for six hundred and one dollars. December 21, 1815, Byxbe recovered judgment for two hundred •and twenty dollars.
In December 30, 1814, in the interval between the rendition of the two judgments, the land was patented to the heirs of Massie, he being dead.
Sundry executions were taken out upon the judgments, which were at no time dormant. In 1821, the land was sold, purchased by Douglass, sale confirmed, and deed made. If Kerr had a legal title to the land at the time of the judgment, that title passed.
On January 29, 1816, Kerr remaining in possession, mortgaged to the Bank of Chillicothe one hundred and fifty acres, by a deed, containing the same recitals, viz : that the land was patented to Massie, conveyed to him by the heirs of Montgomery, and by them conveyed to Kerr.
In June, 1822, sci. fa. was issued on the mortgage, judgment was had in 1823, by which, on the 18th of April, the land was sold and purchased by Scott; the sale was confirmed and deed made; Kerr released to Scott.
In August, 1823, Cadwalader Wallace, trustee of the heirs of Massie, created by the act of the legislature, conveyed the title remaining in Massie’s heirs to Scott.
In 1827, Montgomery’s heirs brought their bill in chancery, in common pleas of Ross county, and by a decree of that court, the deficiency in the deed from Massie to them was supplied.
Actions of ejectment have been prosecuted by Douglass, possession of the land been recovered, and still remains in him. He now brings this bill against all persons claiming under Kerr, to quiet his title, and to enjoin them from ever disturbing it.
It is first to be inquired whether he has the remedy in chancery. We do not feel it necessary to inquire under what circumstances a bill of peace, properly so called, is sustainable, or whether the English chancellor, in a case like *the present, would find the plaintiff’s right satisfactorily established, and restrain further litigation as vexatious; we believe our own statute extends the English remedy, by bill quia timet, and in providing that he who *179 is in possession of land, and having the legal title, may call any pretending a claim to come forward and assert it, has rendered plain the right of the plaintiff to pursue the present remedy.
The right to file this bill depends upon the existence of a legal title, at the time the bill is brought; the whole case which the plaintiff can make, is embraced in the proposition that he had a legal title, superior to any in the claim of the defendants.
The transaction has become of a pretty complicated character, and a great variety of points have been submitted to our consideration. Among others, there have been argued the following ■ questions:
1. Whether Massie’s heirs take by descent or purchase, under the patent to them, issuing on a survey by their ancestor.
2. Whether the want of a witness in the deed from Massie to Montgomery’s heirs is cured by the statute of 1826, it having been executed prior to 1808.
3. Whether the statute of uses was in force in Ohio, and if it would raise a use and pass a legal estate in a deed attested by a •single witness.
4. Whether a warranty in a deed from Montgomery’s heirs to Kerr estops all persons claiming through that deed.
5. Whether the statute of limitation acts on lands held by survey before patent, so that the adverse possessor acquires title against all except the government.
6. Whether a descent cast, takes away the action of ejectment in Ohio.
These questions have been argued with much learning and an unsparing industry; but we have been relieved from the necessity of adjudicating them, from finding the legal title established in Douglass, without tracing it through them; my object in this enumeration is to show that we have not disregarded the bearing they have upon the case.
To sustain an action of ejectment, it is generally necessary for the plaintiff to show a perfect legal title in himself; *a proof of title in another will usually furnish a sufficient defense. Yet there are exceptions to this rule, and the well-known cases of those holding interests in lands inferior to the other, as vendees, tenants, mortgagees, are examples of persons who stand in that relation to the persons having the superior interest, that they are not permitted to contest their title, when seeking to enforce their *180 lawful rights. The reason is, that the title of the tenant is derivative only, and if he from whom it comes has no right, the title of the tenant suits with it. The same principle has been estended to cases where the title of both parties springs from the same source'; it seems well established in New York and Pennsylvania, t-hat where the title of both parties is disclosed, and found to have a common origin, iti-snot permitted to either party to go behind the person from whom-they hold, or show that his claim is not good. 10 Johns. 292; 17 Id. 165; Serg. & Rawl. 339.
A majority of the judges who sit in this case would be willing to hold, if necessary, that as Kerr is shown to be the common source of title to both parties, it is not competent to either to deny the right of him from whom alone his own claim arises.
But we unite in the opinion that the facts offer more satisfactory proof of a legal title by giving effect to another principle.
The admission of a fact, however made, is always evidence of the fact against the party making the admission, but the effect of the admission depends upon the manner and purpose for which it is made. It may be presumptive evidence only of the truth, and liable to be denied or disproved. *But if made for the purpose of influencing the conduct, or of deriving a benefit to another, so that it can not be denied without a breach of good faith, the law enforces the rule of good words as a rule of policy, and precludes the party from repudiating his representations and denying the truth of his admissions; and an admission of record, or made for the purpose of superseding proof, or deliberately made under the seal of the party, is of such binding efficacy that under no circumstances is the party permitted to disprove it. Such an admission, under the seal of the party, not oniy prevents *him from disputing, not the truth of the deed itself, but the-truth of any fact which it states ; for a' deed is a solemn act, to any part of which the law gives effect, as the deliberate admission of the maker; it stands to him for truth, and in every situation that he may be placed in, to him it is true.
The obligation created by estoppel not only binds the party making it, but all persons privy to him; the legal representatives of the party, those who stand in his situation by act of law, and all who take .his estate by contract, stand in his stead, and are subjected to all the consequences which accrue to him. It adheres to the land, is transmitted with the estate; it becomes- a *181 muniment of title, and all who afterward acquire the title take it subject to the burden which the existence of the fact imposes on it.
These principles had their origin at a very early period in the common law, and have been adopted in the most respectable courts in our own country.
If the condition of a bond recites there are divers suits, the obligor is estopped to say there are no suits. Cro. Eliz. 756.
If a condition be to pei’form the covenants of an indenture, he is estopped to say there is no indenture. 1 Roll. 872.
If a condition be that he and his wife shall do an act, he is .estopped to say he has no wife. 1 Roll. 873.
The above are only examples to which a long list maybe added. The case which is most usually presented is the recital of alease or deed ; that such recital is evidence of the existence of the lease has been repeatedly adjudged. 1 Salk. 295; 1 P. Wms. 432; Willes, 9.
The law seems to be summed up in Com. Dig., Estoppel, 77, A. 2: “In all cases where the condition of a deed has reference to any particular thing, the obligor shall be estopped to say there is no such thing.”
That the estoppel extends to all persons subsequently acquiring title has at .all times been the doctrine of the books. In Trevinan v. Lawrence, the court say: “ Where the estoppel works on the interest in the land, it runs with the land into whose hands it may come;” and Justice Story, in the *case in 4 Peters, 85, reviewing the authorities, says: “Such estoppel binds all persons claiming the land, not only in the same deed, but under any subsequent conveyance from the same party, that such an admission in a recital, by the same person transmitting the title, is a muniment of title, and travels with the land into whomsoever’s hands it may come.”
The application of these principles seems to us to invest the -plaintiff with a legal title. His title depends upon the fact whether Kerr had a legal title to which the judgment lien could attach.
He was in possession, claiming title derived through Montgomery from Massie. Although the deed from Massie to Montgomery •contains the recital that the 'land was patented to Massie, it is doubtful whether the incidents and consequences of a perfect deed .attach to it, in consequence of the imperfections in its attestation. We have decided, the present term, that the estoppel is not raised *182 on a covenant of warranty contained in such a deed. Patterson v„. Sbarpe and others, ante.
The deed from Montgomery’s heirs to Kerr is the one on which-the plaintiff may insist, as investing Kerr with the title necessary to support a levy at lav?. It contains the recital that the land was patented to Massie, and conveyed by him to the heirs of Montgomery. It was an admission, in a deed altogether well executed, by persons having the lawful possession and at least the equitable title. Kerr, taking the right of the Montgomerys, has a right to hold them bound by this admission. And Kerr himself is bound, and will not rely upon- the deed from Kerr to the bank, containing the same admission; but estoppels are mutual,-binding on both parties, and the acceptance of the title by this deed makes him a party to the admission; and the assignee, he to whom the estate comes, either by the act of law or the act of the party, are aliko concluded. That the land was patented to Massie, and by him. conveyed to the heirs of Montgomery, are facts proved by the admissions of the heirs of Montgomery, while the owners of the property, upon which all persons deriving the title under them have a right to rely, and which conclude all persons to whom their estate is transmitted. If these facts exist, Kerr’s legal title in fee-*was perfect; that they are true, neither of the parties, as-' deriving title through this deed, is at liberty to question.
Of Wallace’s deed to Scott, it is only necessary to say he was-made by an act of the legislature a special trustee, with power to convey the legal title to those who have the right to it. If he convey to another than the lawful bolder his acts are void. The-opinion we have before expressed leads us to the conclusion that at that time Douglass had, as between these parties, the title perfect at law, and such an act of Wallace can confer no interest.