No. 28,960.

STELLA D. ALLEN, *Appellee,* v. LESTER BIRCH et al., *Appellees,* and THE SOLOMON NATIONAL BANK, *Appellant.*

(282 Pac. 737.)

Opinion filed December 7, 1929.

*David Ritchie,* of Salina, for the appellant.

*W. N. Tice,* of Beloit, and *A. M. French,* of Concordia, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The action is one for the partitioning of real property, for the establishment of an oral mortgage thereon, for the foreclosure of the mortgage, and the adjustment of liens. Judgment was rendered in favor of the plaintiff, Stella D. Allen, and in favor of defendant, Lester Birch, as administrator of the estate of Clara T. Birch, deceased, from which the defendant, the Solomon National Bank, appeals.

Findings of fact were made by the court as follows:

"1. Prior to 1909 William Birch was the owner of a tract of land beginning 102 rods 12 feet west from the southeast corner of the northeast quarter, thence 70¼ rods to railroad, thence south along railroad limits to west line of the

northeast quarter, thence south to the center of the section, thence east to beginning, consisting of 22 acres, all in section 16, township 6 south, of range 6 west of the sixth P. M.; also the east half of the southwest quarter of the same section; and also the west 57 rods 4½ feet of the west one-half of the southeast quarter of the same section. Sometime during the year 1909 William Birch died intestate, seized of the above-described land, upon which there was a mortgage of $3,000.

"2. William Birch left as his sole and only heirs at law, his widow, Clara T. Birch, and Lester Birch and Stella D. Allen, children of his wife, Clara T. Birch, and also Dallas U. Birch, a son by a former marriage.

"3. Clara T. Birch and her son, Lester Birch, after the death of William Birch continued to reside upon this land until 1915, when Lester Birch was married and he, with his wife, continued to reside upon the land, but he and his wife occupied a certain portion of the dwelling house thereon and his mother, Clara T. Birch, occupied another portion of the house, until her death in 1926.

"4. In 1914, when the $3,000 mortgage on the land of which William Birch died seized became due, his two sons, Dallas and Lester, desired to purchase some additional real estate, and in order to procure funds to assist them in purchasing said real estate, the mother, Clara T. Birch, and the sister, Stella D. Allen, together with Lester and Dallas Birch, executed a mortgage on the lands of which William Birch died seized for $5,500, $3,000 of which was used to pay off the prior existing $3,000 mortgage and $2,500 of which was turned over to Dallas and Lester Birch and used by them in the purchase of other lands.

"5. At the time of borrowing said $5,500 it was orally understood and agreed between Lester and Dallas Birch and their sister, Stella D. Allen, and their mother, Clara T. Birch, that if the $2,500 was borrowed by a mortgage on the entire interest in the land, that they would pledge to Clara T. Birch and Stella D. Allen their undivided interest in said land as security for said sum of $2,500.

"6. In 1921 the $5,500 mortgage was renewed and the matter of the $2,500 borrowed for Lester and Dallas Birch was again discussed orally with their sister and mother, and it was understood by them and their sister and mother that if a new mortgage was taken they would again pledge to their sister and mother their undivided interest in the above lands as security for the $2,500. With this understanding a new mortgage was executed in the sum of $5,500, the proceeds of which was used to take up the old mortgage of $5,500.

"7. In 1922 the Solomon National Bank obtained a judgment against Dallas U. Birch and Lester Birch for $1,281.55 with interest at eight per cent per annum from April 28, 1921, and $133.11 as costs. On the 11th day of May, 1925, there was issued an execution on said judgment from the office of the clerk of the district court of Mitchell county, Kansas, and levy was made upon the interest of Dallas and Lester Birch in·the land in question, which interest was later sold, and finally culminated in a sheriff's deed dated April 25, 1927, conveying the undivided interest in Dallas and Lester Birch in said land to the Solomon National Bank, the execution purchased for the sum of $1,000; another execution was levied against the property of Dallas and Lester Birch upon which was realized $650 less the costs of the execution sale.

"8. Clara T. Birch paid on the $5,500 mortgage executed in 1921, from her own individual property, the sum of $2,900.

"9. Lester Birch paid from the estate of Clara Birch $273 interest on the $5,500 mortgage; Lester Birch also paid individually during the last three years, $198.20 taxes; Lester Birch also has in his hands rentals belonging to the owner of the land in question about $1,000 and about 100 bushels of wheat, of which $500 and 100 bushels of wheat was rent for 1928; Lester Birch also in 1928 put about 550 rods of woven-wire fence and between 250 and 300 posts in fence on said property, and they are still there and they are there now. The cost of this fence, outside of labor and putting it there, was about $270, and this the court finds is the reasonable value of the improvement at this time.

"10. Dallas U. Birch executed a quitclaim deed to his mother, Clara T. Birch, under the date of the third day of May, 1925, for the express considera- tion of $1, all of his right, title and interest in and to the land in question in this suit; said deed was properly executed before George I. Buxton, a notary public in California, on the 11th day of June, 1925, and filed for record in the register of deeds' office of Mitchell county, Kansas, July first, 1925; and Lester Birch and wife, Edna R. Birch, executed a warranty deed to Clara T. Birch, under date of December 6, 1923, to their undivided interest in the lands in question in this suit, consideration, expressed in the deed, one dollar and other valuable consideration, the deed was acknowledged before E. Gaston, a notary public in Mitchell county, Kansas, December 6, 1923, and filed for record in the office of the register of deeds of Mitchell county, Kansas, December 7, 1923, said warranty deed excepted the grantors' proportionate share of a $5,500 mortgage now of record, which mortgage Clara T. Birch now assumes. The deed also carries fifty cents federal revenue stamp.

"11. There is due and owing the Solomon National Bank on their claim the sum of $313.59 with interest at 8 per cent from this date, there is due and un- paid to the First National Bank of Beloit, Kansas, and its assignees on the $5,500 mortgage in question in this suit, the sum of $2,816.62 with interest at 10 per cent."

On those findings the court made the following conclusions of law:

"1. That Stella D. Allen and Clara T. Birch during her lifetime had an equitable lien upon the interest of Dallas U. Birch and Lester Birch in the land in question for the $2,500 which was borrowed by the $5,500 mortgage and delivered to Dallas and Lester Birch.

"2. That the sheriff's deed to the Solomon National Bank conveyed the interest of Dallas U. and Lester Birch subject to said equitable mortgage.

"3. That the estate of Clara T. Birch is not entitled to an interest in the $5,500 mortgage by reason of the payment of her of $2,900.

"4. That the sum of $313.59 which is due on the judgment of the Solomon National Bank against Dallas and Lester Birch is a lien upon the interest that he, Lester Birch, inherited in the property in question from his mother.

"5. Interests of the parties are found in the land subject to the liens here- inbefore declared; four-twelfths to the Solomon National Bank, an undivided three-twelfths to Lester Birch, and an undivided five-twelfths to Stella D. Allen."

Judgment was rendered—

"That the plaintiff Stella D. Allen and the defendant Lester Birch, as the administrator of the estate of Clara T. Birch, deceased, are entitled to enforce the oral contract set out in the plaintiff's petition and in the answer and cross petition of Lester Birch as the administrator of the estate of Clara T. Birch, deceased, and also as alleged in the individual answer of Lester Birch, and to have the same established as a lien upon the undivided four-twelfths (4/12) interest of said land hereinbefore adjudged to be the property of the Solomon National Bank . . .

"That the Solomon National Bank is entitled to a lien for the balance of the judgment shown to be due in the sum of three hundred thirteen and 59/100 ($313.59) dollars . . . and to have the same established as a lien and encumbrance upon the three-twelfths (3/12) interest of the lands hereinbefore described, adjudged to be owned by Lester Birch . . ."

The Solomon National Bank pleaded the statute of frauds and the statute of limitations. The questions argued are: First, that an equitable mortgage was not created by the transaction between Clara T. Birch and Stella D. Allen on the one side and Lester Birch and Dallas U. Birch on the other; second, that the mortgage, if one was made, cannot be enforced on account of the statute of frauds; and third, that the enforcement of the mortgage, if one was created, has been barred by the statute of limitations.

The appellees respond to these contentions by arguing that the Solomon National Bank is not in privity with Lester Birch and Dallas U. Birch, and cannot plead either the statute of frauds or the statute of limitations to defeat the equitable mortgage. If the Solomon National Bank, the purchaser at the judicial sale, is in privity with Lester Birch and Dallas U. Birch, it had the right to plead those statutes.

In *Schmucker v. Sibert*, 18 Kan. 104, this court said:

"As soon as the note is barred the mortgage is also barred; and a grantee of the mortgagor may interpose this defense to an action to foreclose the mortgage, whether the mortgagor does or not." (Syl. ¶ 3.)

In *Hurxthal v. Boom Co.*, 53 W. Va. 87, 88, 94, that court said:

"One purchasing at a judicial sale lands sold from a person is a privy in estate with such former owner, and is entitled to the benefit of a real covenant running with the land and bound as *res judicata* by a decree binding a former owner." (Syl. ¶ 4.)

"There can be no question but that the plaintiff is a privy in the estate with Ben Hurxthal, and an 'assign' within the meaning of that word used in said agreement; for she purchased at the judicial sale, which by law cast upon her the entire estate of Ben Hurxthal, and she is as much an assignee of the property from Ben Hurxthal, as if he had conveyed it to her." (p. 94.)

That court in *Bennett v. Booth*, 70 W. Va. 264, said:

"A purchaser of land at a judicial sale is privy in estate with him who owned it at the time of sale, and takes the land subject to its burdens." (Syl. ¶ 3.)

See, also, 41 C. J. 874.

Section 438 of the fifth edition of Freeman on Judgments contains the following language:

" 'Privity' denotes mutual or successive relationship to the same rights of property. This relationship is produced either by operation of law, by descent, or by voluntary or involuntary transfers from one person to another. Hence privies have, from an early period in the history of the common law, been classified as—

"Privies in law, as lords by escheat, tenant by curtesy, tenant in dower, executor or administrator, the incumbent of a benefice, and all others that come in by act of the law;

"Privies in blood, as heirs and coparceners;

"Privies in estate, as where there is a mutual or successive relationship to rights of property not occasioned by descent nor by act of law."

Part of section 60-3465 of the Revised Statutes should be noticed. It provides—

"That every deed for any lands or tenements heretofore or hereafter made and executed by any sheriff or other officer, purporting to have been made under or in pursuance of any execution . . . shall vest in the purchaser as good and perfect an estate in the premises therein mentioned as was vested in the person or persons against whom the execution, writ or order was issued at or after the time when such lands and tenements became liable to the satisfaction of the judgment or lien for which the same was sold. . . ."

This action was commenced on April 27, 1928. The cause of action to foreclose the mortgage, if one existed, arose within a reasonable time after it was made in 1914 and again within a reasonable time after it was renewed in 1921. The contract was not in writing and is barred by the three-year statute of limitations.

Section 33-105 of the Revised Statutes reads:

"No leases, estates, or interests of, in or out of lands, exceeding one year in duration, shall at any time hereafter be assigned or granted, unless it be by deed or note, in writing, signed by the party so assigning or granting the same, or their agents thereunto lawfully authorized by writing, or by act and operation of law."

Under that statute the oral mortgage could not have been enforced by Clara T. Birch or Stella D. Allen against Lester Birch or Dallas U. Birch. They had the right to plead the statute of frauds and the statute of limitations. Under section 60-3465 of the Revised Statutes the right to plead the statute of frauds and the stat-

ute of limitations by Lester Birch and Dallas U. Birch was transferred to the Solomon National Bank at the judicial sale. All the interest of Lester Birch and Dallas U. Birch in and to the land was sold at the sale and was transferred by the sheriff's deed, that much and no more.

The plaintiff relies on *Fitzgerald v. Fitzgerald,* 97 Kan. 408, 155 Pac. 791, where this court said:

"One to whom the owner of land is indebted, and who orally agrees to and does lend money to the landowner with which to pay some of his debts, and who promises to and does pay other of the landowner's debts, and promises to and does become surety for the landowner for other of his debts, on the agreement of the landowner that he will deed to the other certain lands to secure him for the debts, money loaned, money paid and obligations incurred, becomes an equitable mortgagee of the lands agreed to be conveyed from the time of making such agreement; and his lien is paramount to that of a subsequent attaching creditor, although the deed is not made nor recorded until after the attachment is levied." (Syl.)

The difference between that case and the present one is this: There, the owner of the land agreed to convey the land to secure the payment of the debt incurred, but did not do so. Here, there was no agreement to execute or make a mortgage. It is contended that the oral contract constituted a mortgage. A mortgage cannot be created orally; it must be in writing.

The judgment is reversed, and the trial court is directed to render judgment in accordance with this opinion.