## BAILEY v STEDRONSKY et

Ohio Appeals, 5th Dist, Ashland Co

Decided Dec 3, 1936

J. L. Mason, Ashland, for appellant.

C. W Chorpening, Ashland, for the Jefferson-Lincoln Progressive League, Inc., appellee.

Frederick D. Schell, Ashland, for The Federal Land Bank of Louisville, Kentucky, appellee.

## OPINION

By SHERICK, J.

This is an action brought by the plaintiff, appellant, Clifton C. Bailey, for ejectment and the quieting of title. The answer of The Jefferson-Lincoln Progressive League, Inc., avers that it is the present owner of the premises, subject to a mortgage of The Federal Land Bank of Louisville, Kentucky, and generally denies that it is wrongfully keeping the plaintiff out of possession. Defendant, Michael Stedronsky, is in default for answer or demurrer. The Federal Land Bank, by its answer, denies the plaintiff's claim of title and avers that it holds a mortgage on the premises executed and delivered to it by Stedronsky, who was the predecessor in title to The Jefferson-Lincoln Progressive League, Inc., the present owner. This answer further avers facts from which it is claimed that plaintiff is estopped from asserting title to the premises. It is this issue, denied by the reply, which presents the question for this court's solution. The bank, by cross-petition, asks

75

for foreclosure of its mortgage from Stedronsky, the conditions of which have been broken and which has now become absolute.

The pleadings and the facts establish that, in 1867, Ephrian Welch conveyed the premises in question to his daughter Catherine E. Bailey. This deed was duly recorded in 1874. The granting clause thereof conveyed the title "to the said Catherine E. Bailey during her natural lifetime and to her children, if any shall be living at her death and in case she the said Catherine shall not have any children living at her death then to the brothers and sisters of the said Catherine and their heirs and assigns forever."

Clifton C. Bailey, born in 1876, was the only living child of Catherine Bailey, who died in 1927. It is evidenced by the appellant that he had no knowledge of the conditions of his grandfather's deed until some time after his mother's death when he discovered the instrument among old papers belonging to his mother, and until then he had always assumed that his mother was the owner of the fee simple title to the lands in question.

In the year 1917, Catherine Bailey, acting through her son and a real estate broker, sold or traded this farm to one Albert Saurer. Clifton Bailey is found to have received the entire consideration for this transaction. It is evidenced by legal counsel, who checked the title and drew the instruments of conveyance in 1917, that the appellant was then advised as to the state of the title and that he should also execute the deed to Saurer. He failed however to join in that instrument. Saurer thereafter conveyed the premises to his grantee, through whom, and successive grantees, the title has now come to repose in the present grantee and mortgagee.

The trial court found the issues in favor of the appellees and entered judgment of foreclosure, from which the plaintiff appeals on questions of law and fact. The appeal, however, is briefed, argued and presented as of law only. The court determined as a fact that Clifton Bailey knew, in 1917, that he had or might have a remainder in the premises.

Some seven grounds of error are relied upon for reversal. This court may consider only two of these; they being that the trial court erred in overruling plaintiff's motion for judgment on the pleadings, and that the judgment is contrary to law.

Certain claimed errors are not stressed in oral argument and are not briefed. We consider such as having been abandoned. They will therefore be disregarded. See §12223-21, GC. The sixth specification lies in that the judgment is against the weight of the evidence. This ground of error may also not be considered for it is conceded by the appellant that, although the court reporter and the trial court have certified that the bill of exceptions is complete, two important exhibits admitted in evidence are now a part thereof and that the same have been lost. Appellant makes no application for diminution of the record, and offers no substitutes thereof. The record being incomplete, this court may not consider the weight of the evidence, but is relegated to an adoption of the mandatory assumption and conclusion that the trial court's finding of facts is the truth of the facts in issue, from which we may not deviate.

Upon this state of the record it appears that appellant knowingly and silently stood by and permitted his title to be sold to Saurer and received the consideration therefor. Such a course should and would estop him from asserting a claim of title against his mother's grantee. The question is however: May the doctrine of equitable estoppel be asserted against him by the subsequent grantees of Saurer? It is maintained by the appellant that it can not be done for the reason that the evidence of his title was a matter of public record; that appellees had ample opportunity to ascertain by examination the true state of the title; that no act or representation of the appellant misled them to their detriment; and that there is no privity of estate existing between him and the parties adverse to his suit, and hence the defense of estoppel is not available to them.

In that the query may be further limited, it is concluded, although the appellant argues to the contrary, that he possessed, by the terms of the deed, a vested estate in remainder, subject to be divested upon the happening of a certain event, to-wit, that he predecease his mother. This court considers that the appellant had "a present fixed right to future enjoyment." "It is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment." Clifton Bailey possessed that right to future enjoyment from the date of his birth. Death of his mother at any time would have placed him in immediate possession. See **Simpson v Welch, 44 Oh**

Ap 115 (13 Abs 714), 184 NE 242, and authorities therein noted. It therefore follows that Bailey had a vested remainder in this land in 1917 and not a contingent future interest which only matured on his mother's death.

One further observation may be made for a like purpose. It is considered that when the Stedronsky mortgage was breached and became absolute, the equitable title existing in the bank ripened into the full legal title as between the parties and their assignees, subject only to the ██ equity redemption before sale. This is acquired by virtue of the mortgage conveyance and its breach just as effectually as if Stedronsky had conveyed the premises to the bank by deed rather than by mortgage. For all intent and purposes of what is hereinafter said we conclude that the mortgagee may be considered just as if it were a grantee in the course of the chain of title acquired from grantee Saurer.

We are apprised of the serious difficulty confronting the court in that if the appellees' title is sustained violence must be done to the recording statutes and that if the appellant's claim is recognized we deny the application of the established principles of equitable estoppel. In solving the problem two well settled rules of property seemingly come in direct conflict. We note from counsel's diligent search and our own extended inquiry that the courts of the various jurisdictions have very generally ignored the one and applied the other. We are cognizant of the rule that equity follows the law and is not intended to supersede it but we are not unmindful of the fact that there are instances where strict adherence to the law works manifest injustice. It is in these fields where equity intervenes and renders aid where the law has not entered and can not do justice between litigants.

Appellant strenuously urges that he was not estopped as against his mother's immediate grantee. It is said that ██ certain conditions must exist before one may be estopped by his conduct. In support thereof we are directed to Blodgett v Perry, 97 Mo. 276, 10 SW 891, and kindred cases. These essential requisites are set forth in 2 Pomeroy's Equity Jurisprudence (3 Ed.) 1431 and 1432. §806. This without doubt correctly states the general rule of equity, but it will be found that estates in land have almost universally received a somewhat different consideration. Appellant says that the public record

was open to Saurer and his grantees, hence they were charged with knowledge of the condition of the title and that one may not plead and defend upon estoppel when the means of informing himself are within his own reach. It is also maintained that the subsequent grantees and appellees never knew of his conduct, that the records were open to them, that they therefore never acted in reliance thereon or were deceived thereby or altered their position by reason thereof. This is perhaps true. The fact is, however, that if these grantees were reprehensible in their failure to search the records, so also is the appellant derelict in not knowing the extent of his then title. In this respect the equities existing between the parties may be said to rest in equipoise. There are, however, two facts as found by the trial court and by which this court is bound, which should and do cause the scales of justice to balance strongly in favor of the appellees, and which are that the appellant did have actual knowledge of the condition of his title and that he received the full consideration for the conveyance. Such being the conditions existing, the maxims and rules of equity would and should deny him aid if Saurer were his adversary. It is said in 10 Ruling Case Law 781, that:

"A strong case of estoppel is made out when by conduct or representation an owner encourages another to believe that a third person is the owner of land, and thereby induces him to purchase or take a mortgage on the property."

It is also found stated in Pomeroy, supra, page 1432, §807, that:

"The general rule is, that if a person interested in an estate knowingly misleads another into dealing with the estate as if he were not interested, he will be postponed to the party misled, and compelled to make his representations specifically good."

And now considering the principal question, we find the word "privy" defined in 10 Ruling Case Law 838. The author says:

"A 'privy' to a deed meaning a party, legal representative of, or successor in title to, a party and one bound by the deed."

We shall not attempt to burden this opinion with quotations from adjudicated cases, save two that will hereinafter be commented upon, but we shall content ourselves with direction thereto and a summarization thereof. When the term "privity" is

considered in respect to its relationship to estates in realty it must be ██ understood that it implies succession; that is, successive ownership or possession of the identical estate in the same property. In other words, he who is in "privity" with another in respect to an estate, stands in exactly the same position with regard thereto as did his predecessor in title; he takes the estate with all the burdens and benefits attending it If the estate be burdened or benefited by an easement it may be litigated but once, for its establishment or denial becomes binding upon all thereafter who are in privity with the contesting predecessor in title. If one in the course of title has a right in respect to his estate ██ which he might assert as against another his successor may assert that right unless it be lost by laches, by lapse of time or by operation of law.

Now let us measure the equities of the parties to this suit by the rules just epitomized. Saurer possessed a right in equity and good conscience which he might assert against the appellant. He was not called upon to assert that right, but his grantees are. If Saurer were called upon by his grantee to make his warranties good, he surely would be justified in calling upon the appellant, who received his purchase money or equivalent, to reimburse him. If the principle of equitable estoppel be applied a circuity of action and multiplicity of suits would be avoided. Are the appellees in privity with Saurer? We think they are. All they possess they have acquired through him by succession in the chain of title. Their estate is no greater or less than that possessed by him. They are entitled to and do stand in his shoes.

We direct attention to the following authorities: Green v Wahl, 117 Okla. 292, 246 P. 419; Pool v Morris, 29 Ga 374 (382), 74 Am. Dec. 68; Allen v Birch, 129 Kan. 351, 282 P. 737; Johnson v Commonwealth B. & L. Assn., 182 Ark. 226, 31 SW (2d) 136; Boughton v Van Valkenburgh, 46 App. Div. 352, 61 N. Y. Supp. 574; Mygatt v Coe, 124 N. Y. 212 (219), 26 NE 611 (613), 36 NE 810, 42 NE 11, 11 L.R.A. 646; and Pholhamus v Hines, 128 Misc. 299, 218 N. Y. Supp. 401.

In Roper v Smith, 45 Cal. App. 302, 187 P. 454, is found a case where a mortgagor was held to be estopped from pleading the statute of limitations against his mortgagee. It was held that he was likewise estopped as against his mortgagee's assignee, and the court stated:

" 'It is a general rule that an estoppel operates, not only on the parties to the transaction but also on their privies in blood, estate, and contract'."

We are not without precedent in Ohio. In the early case of Douglass v Scott, 5 Ohio 194 (198), it is said by our first court that:

"The obligation created by estoppel not only binds the party making it, but all persons privy to him, the legal representatives of the party, those who stand in his situation by act of law, and all who take his estate by contract, stand in his stead, and are subjected to all the consequences which accrue to him. It adheres to the land, is transmitted with the estate; it becomes a muniment of title, and all who afterward acquire the title take it subject to the burden which the existence of the fact imposes on it."

This statement is later found approved and quoted in toto in Lessee of Buckingham v Hanna, 2 Oh St 551 (556). Both of these Ohio cases deal with the grantor's after-acquired title. They are, however, apt illustrations of the rule that subsequent grantees of the same estate are in privity with the initial grantee. They are also of interest, for if such be true of an after-acquired title, of which a contingent remainder might be taken as an example, then the same rule should and does apply with greater force when the estate is a vested one at the time of the principal conveyance out of which the equities arise.

It is our judgment that the question before us must be answered in the affirmative. The appellees may properly assert the defense of estoppel.

The appellee bank has in the main based its reason for affirmance upon the theory that privity of estate is not necessary where the existence of the fact relied upon is permeated with fraud. We are unable to follow this reasoning. One might defraud a blind man as to a physical fact pertaining to real estate. His assignee with perfect vision could not be misled to his damage and be advantaged by what he saw but does not later choose to have seen. We do, however, readily concede that where the facts relied upon to effect an estoppel are steeped in fraud, if such be true in this case, it presents a more enticing and deserving reason for equitable disapproval. The trial court found that the appellant's conduct was at least constructively fraudulent. We may not disagree with that finding. The same effect would follow if his conduct,

that is, his carelessness or recklessness with respect to his own estate, had occasioned the situation.

The judgment may be affirmed.

Judgment affirmed.

LEMERT, PJ, and MONTGOMERY, J, concur.