SHIPMAN ET AL., APPELLANTS;
ENVIRONMENTAL PROTECTION AGENCY, APPELLEE, *v.*
LORAIN COUNTY BOARD OF HEALTH ET AL., APPELLEES.

(No. 2794—Decided March 28, 1979.)

*Messrs. Wilcox & White* and *Mr. Gregory A. White,* for appellants.

*Mr. William J. Brown,* attorney general, and *Ms. Marty Anderson,* for appellee Environmental Protection Agency.

*Mr. Joseph R. Grunda,* prosecuting attorney, and *Mr. Donald F. Carek,* for appellee Lorain County Board of Health.

*Messrs. Fauver & Fauver* and *Mr. Stuart L. Fauver,* for appellee city of Oberlin.

MAHONEY, P. J. Plaintiffs, Wayne M. and Nancy K. Shipman, appeal the judgment denying their prayer for in-

junctive relief against defendants, the Lorain County Board of Health and the city of Oberlin, and granting the prayer for injunctive relief of the Lorain County Board of Health. We affirm.

## Facts

The Shipmans' amended complaint requests preliminary and permanent injunctive relief to prevent defendant Lorain County Board of Health (the board of health) from "interfering" in plaintiffs' business and a mandatory injunction ordering defendant city of Oberlin (the city) to issue a permit allowing plaintiffs to use the city sewer system. The board of health's "cross-complaint" seeks preliminary and permanent injunctive relief against plaintiffs' operation of the new portion of plaintiffs' Dari-Land Restaurant. Involuntary plaintiff, Environmental Protection Agency of Ohio (the EPA), was originally a party-defendant, but was realigned during the course of the proceedings.

Briefly summarized, the findings of fact show that plaintiffs own a five acre parcel on the west side of State Route 58, about one mile south of the city's corporate limits. Plaintiffs' residence and their fast-food restaurant, Dari-Land, are on this parcel. Directly across from plaintiffs' property and on the other side of State Route 58, lies a 12 inch sanitary sewer line, running from the city to the Lorain County Joint Vocational School and situated about 1,000 feet southeast of plaintiffs' parcel. This sewer line was constructed pursuant to a 1971 agreement between the city and the school and passes waste from the school to the city sewage treatment plant. The construction of this sewer line represents an exception to the city's policy, dating from the mid-1960's, whereby non-residents could not use city utilities. In 1973, the city entered into a grant agreement with the United States Environmental Protection Agency whereby the city was provided access to $1,335,750 for the improvement of the city's waste water treatment plant.

The plaintiffs desired to expand Dari-Land and, in 1975, received approval for the proposed addition's structural plan from the Ohio Department of Industrial Relations. The EPA did not, however, approve any plans calling for an on-site sewage treatment facility. The EPA based this action on soil

and stream conditions and the proximity of plaintiffs' property to the sewer line running to the joint vocational school. Plaintiffs requested the city to allow them to tap-in to the sewer line. The city refused.

On November 10, 1975, city Ordinance No. 1156 was passed. This ordinance codified past city policy by requiring annexation prior to use of city utilities. Plaintiffs signed an annexation petition and the city has actively pursued the annexation of the area encompassing plaintiffs' property. However, plaintiffs' land is not contiguous to the city or any land presently being annexed.

Notwithstanding their knowledge that both the EPA and the board of health had not approved any sewage treatment plans, plaintiffs expanded Dari-Land and opened the addition for business in July 1977. The board of health ordered the plaintiffs to cease and desist from using their on-site sewage treatment system. This treatment system is inadequate to cope with the increased effluent from Dari-Land.

Trial disclosed the policy of both the EPA and the board of health to encourage the use of available sanitary sewers. The trial court found that the "only environmentally sound solution" to plaintiffs' problem would be a tap into the city's sewer line. The trial court nevertheless denied all of plaintiffs' requested relief and enjoined them from operating the new portion of Dari-Land. However, this order does not apply to rest room facilities in the addition, since these facilities only replace the older facilities. The trial court stayed execution of judgment pending appeal.

After the trial, plaintiffs abandoned their request for injunctive relief against the board of health (which, in fact, claimed that city Ordinance No. 1156 was unreasonable), apparently, on the basis that if a tap-in were ordered, EPA and then board of health approval would follow. Plaintiffs follow the same course on appeal, as all assignments of error are directed towards the denial of mandatory injunctive relief against the city.

## Discussion
### Assignment of Error I

"The Ruling of the trial court is contrary to the law as it should be applied to the facts in the present case."

Under this broadly worded assignment of error, plaintiffs argue that city Ordinance No. 1156 conflicts with state policy as expressed in R. C. Chapters 3745 and 6111. Interestingly, the EPA concurred with this view at the trial court level and requested that the injunction issue against the city (but not against the board of health which, it seems, is taking its cue from the EPA insofar as approval of plaintiffs' disposal system is concerned). On appeal, however, the EPA's primary contention is that no conflict has yet arisen. The EPA still adheres to the view that the best solution, from an environmental standpoint, is for plaintiffs to use the city treatment system.

The EPA is created by R. C. Chapter 3745. R. C. 3745.011 sets forth legislative intent that the EPA involve itself in a broad spectrum of environmental concerns. R. C. Chapter 6111 lodges broad authority in the director of the EPA to deal with water pollution. R. C. 6111.03(H)(2) allows the director, consistent with the prevention, control, or abatement of water pollution, to order:

"***the construction of new disposal systems or any parts thereof, or the modification, extension, or alteration of existing disposal systems or any parts thereof***."

Orders of the director may be appealed to the Environmental Board of Review (R. C. 3745.04) and the board's action may be appealed to the Court of Appeals (R. C. 3745.06). This method of review is exclusive. *Cincinnati, ex rel. Crotty,* v. *Cincinnati* (1977), 50 Ohio St. 2d 27.

The EPA claims the power to order the city to allow plaintiffs to tap into the city sewer system. We do not reach the validity of this claim. Plaintiffs admit both that R. C. Chapter 6111 contains no prohibition against the city requiring annexation prior to allowing access to its sewer system, and that the director of the EPA has not ordered the city to allow plaintiffs such access. Plaintiffs do not controvert the EPA's claim that the EPA has not promulgated any regulation requiring a municipality to extend its sewer system beyond the municipal boundaries. Clearly then, the state has neither affirmatively permitted what the city has prohibited, nor prohibited what the city has permitted. See *Struthers* v. *Sokol* (1923), 108 Ohio St. 263.

Plaintiffs instead posit the legislative intent that water pollution be controlled under a statewide plan. Plaintiffs claim city Ordinance No. 1156 conflicts with this policy. Municipal enactments contravening the expressed policy of the state have been voided. *Cleveland* v. *Betts* (1958), 168 Ohio St. 386; see *Yorkavitz* v. *Bd. of Township Trustees* (1957), 166 Ohio St. 349. Prudence counsels us, however, to refrain from declaring the presence or absence of the state policy claimed by plaintiffs. Such a judgment would be premature. The EPA has clear authority over the general subject and is charged with giving content to, and enforcing, whatever the state's policy may be in these complex matters. We find that resolution of this aspect of the controversy must await action on the EPA's part, more definite than it has taken to date.

## Assignment of Error II

"The Trial Court erred in finding that the Appellants acquired no rights to the Oberlin City Sewage Treatment Facilities under the contract to construct the new sewer line to the Lorain County Joint Vocational School or the federal grant to enlarge the City's Treatment Plant."

Plaintiffs state that the city is under a duty to allow the tap-in by reason of the agreement between the city and the Lorain County Joint Vocational School District, plaintiffs' Exhibit No. 17; the agreement between the city and the United States Environmental Protection Agency (the USEPA); and the city's application for the federal grant.

Looking first at plaintiffs' Exhibit No. 17, we find therein no indication that the city has bound itself in any manner to allow plaintiffs' access to the sewer line running to the joint vocational school. This agreement may be said to contemplate future connections outside the city limits, but no duty is placed upon the city to allow such connections.

In regard to the USEPA grant, it is readily apparent that the city's application for the grant specifically notes the city's policy regarding the encouragement of annexation by prohibiting extension of the sewage system beyond the city's boundaries. It may be that the USEPA is now reconsidering the wisdom of this approach, to the possible financial detri-

ment of the city; but we find no duty upon the city, arising from the federal grant, requiring the city to allow plaintiffs' tap-in.

### Assignment of Error III

"The Trial Court erred in finding that the policy of Oberlin set forth in Ordinance No. 1156 AC CMS is not unreasonable, arbitrary or capricious and bears a legitimate and rational relationship to the health, safety and welfare of its citizens and is a legally valid exercise of police powers under the laws of the State of Ohio and the Charter of the City of Oberlin and does not violate constitutional rights of Appellants."

Plaintiffs state that city Ordinance No. 1156 is unreasonable, arbitrary, discriminatory and capricious. Sections 2 and 19 of Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution are cited. The first section of city Ordinance No. 1156 states, in part, that city council:

" * * * reaffirms as general policy the practice of requiring annexation prior to any tap-in of City utility lines."

The reasoning behind this ordinance was explained by Thomas Dalton, the City Manager:

"The city's policy for that is the following. We, in Oberlin, are very concerned about the kind of uncoordinated, uninvited growth that can occur around a city. Too often you can see municipalities that give up their utilities very quickly. You find development occurring outside the city. The benefit to the city is only in terms of utility rates.

"There is a tremendous loss of tax base and inability to proper fund existing or future services. We have only to look at Northern Lorain County in comparison to areas in Southern Lorain. And we are very much protective of that area and we have adopted this policy on a long-term planning basis."

Plaintiffs have not demonstrated either a state or federal constitutional prohibition against the ordinance. The aims the ordinance seeks to promote are legitimate and the means employed are reasonably related thereto. The city's primary concern in the operation of its utilities is the welfare of city inhabitants. *VMJ Company, Inc.,* v. *Lorain* (1957), 105 Ohio

App. 166. The record shows the city's desire to annex plaintiffs' property and plaintiffs' willingness to be annexed. Plaintiffs' complaints would, perhaps, be more sharply focused if they had opposed such annexation.

Plaintiffs' primary contention of discrimination must be based on the service by the city of the joint vocational school. The sewer main to the school was laid prior to the codification of the city policy.

We do not reach the question of whether the ordinance is a proper subject matter for legislative action since both parties agree that the policy exists and has been followed through successive city administrations.

Thomas Dalton testified to the reasons underlying the agreement between the city and the school. Dalton explained that, in 1969, the city was advised that the school had received tentative state approval for an on-site package treatment plant for some 24,000 gallons per day. A parallel system of another 24,000 gallons per day was discussed for the future. State standards then required outlets for such plants to be at least ten miles from any municipality. The school's plants would, however, discharge into tributaries of the Black River, some three miles from the city's water intake facility. This discharge also threatened large algae growth. There was also a planned trailer park south of the city, which was to have an on-site treatment plant discharging into the Black River some five miles upstream of the city's intake facility. After much review, city council decided that the situation concerning the school was so unique that a variance from city policy was appropriate. We find no unlawful discrimination against the plaintiffs. See *State, ex rel. Indian Hill Acres, Inc.,* v. *Kellogg* (1948), 149 Ohio St. 461.

### Assignment of Error IV

"The trial court erred in finding that the Appellants have violated the equitable doctrine of 'clean hands' in constructing their addition with the knowledge that they did not have permission to tap into the Oberlin City Sewer Line or to have an onsite sewage disposal facility."

Application of the "clean hands" maxim precludes equitable relief. We find the trial court erred in relying on

this maxim. If the ordinance was found unconstitutional or invalid in some other manner, plaintiffs would not be barred from relief by constructing their facility prior to that determination.

However, the error is not prejudicial.

### Summary

We overrule the first, second, and third assignments of error and sustain the fourth assignment of error. We understand that the judgment does not affect the "old" portion of plaintiffs' business, as it was constituted prior to the construction commencing in 1976.

The judgment is affirmed.

*Judgment affirmed.*

BELL and VICTOR, JJ., concur.