ANDRES ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* CITY OF PERRYSBURG, APPELLANT AND CROSS-APPELLEE.

(No. WD-87-34—Decided April 22, 1988.)

*Philip L. Dombey,* for appellees and cross-appellants.

*Peter D. Gwyn,* for appellant and cross-appellee.

*Per Curiam.* This matter comes before the court on an appeal by defendant-appellant, city of Perrysburg (hereinafter "appellant") and on a cross-appeal by plaintiffs-appellees, Frederick F. and Josephine Andres and David and Laura Empie (hereinafter "appellees"), from a final judgment entry in the Wood County Court of Common Pleas granting appellees' motion for summary judgment and denying appellant's motion for summary judgment.

The record and a stipulation of facts disclose the relevant facts in this case. A permanent utility easement was granted on April 17, 1976 by Mary B. Watrol and Katherine B. Hanna (the predecessors in interest to the real property at issue) to the Board of Commissioners of Wood County, Ohio, for the purpose of constructing a sanitary sewer system in Perrysburg Township. This easement contained a provision that the owners could utilize the sewer system under terms and conditions designated by Wood County.

Construction of the sewer system was accomplished by the county with state and federal funds during 1978

and 1979. This sewer district (hereinafter "S.S. #400") was designed to service part of the city of Rossford, the city of Perrysburg, and Perrysburg Township. The water pollution control plant within the city of Perrysburg treated the sewage from S.S. #400. The city of Perrysburg also received federal funds and a grant from the Ohio Water Development Authority to expand the plant to enable it to handle better the waste generated by S.S. #400 and its existing load.

Prior to the construction of S.S. #400, Wood County and the city of Perrysburg had entered into an agreement dated December 28, 1972, to utilize the sewage treatment facilities maintained by the city of Perrysburg for treatment of sewage generated from other sewer districts in the unincorporated areas of Wood County. In September 1977, the city and county both enacted legislation to extend this agreement from its termination date of December 31, 1975 to September 15, 1977, when a new agreement was executed. This new agreement expired on December 31, 1982. On December 19, 1984, the city and county entered into another agreement to cover service to the unincorporated areas of the county because supplying such service had become a greater burden than anticipated. This new agreement was set to expire on December 31, 1987. Unlike the prior agreements, the 1984 agreement contained provisions that the county acknowledges that the city will enforce present and future sewer standards, ordinances, rules and regulations and that non-resident users are subject to resolutions, ordinances, and general rules and regulations of the county and city regarding the sewer system.

By Ordinance 15-85, passed February 5, 1985, the city of Perrysburg required all non-resident users who tapped into the sewer lines after January 15 1985, to annex the land to the city. Thus, when appellees sought to tap into the sewer system in May and June 1985, both executed a "Sewer Agreement" which provided for services to be extended to appellees and also required appellees to sign an annexation petition. In August 1985, appellees withdrew their names from the petition. The city of Perrysburg notified appellees by letter that their service would be cut off in thirty days. Appellees brought suit on October 11, 1985, to have the Sewer Agreements declared unlawful and unconstitutional and to request an injunction to prevent enforcement of Ordinance 15-85. The city of Perrysburg counterclaimed alleging breach of contract.

Upon motions for summary judgment having been filed by both sides, the trial court ruled that the city is not required to provide sewer service outside its corporate limits and may require annexation as a condition precedent to such extension of service. However, the court found that it was inequitable to require new users within the S.S. #400 district to have their land annexed when users prior to January 15, 1985, did not.

Appellant appealed from the above order and asserted two assignments of error:

"First Assignment of Error:

"The trial court erred in not granting defendant-appellant's motion for summary judgment in that there was no genuine issue as to material fact and that defendant-appellant was entitled to judgment as a matter of law.

"Second Assignment of Error:

"The trial court erred in granting plaintiffs-appellees' motion for summary judgment on the basis of equitable estoppel in that such judgment is against the manifest weight of the evidence and that plaintiff[s]-appellee[s] [are] not entitled to such judgment as a matter of law."

Appellees likewise cross-appealed

from this order and asserted two assignments of error:

"First Assignment of Error

"The trial court erred in failing to declare the city of Perrysburg Ordinance No. 15-85 unlawful and unconstitutional, and thereafter failing to invalidate and void said ordinance, in that there was no genuine issue as to material fact and that plaintiffs-cross-appellants were entitled to this judgment as a matter of law.

"Second Assignment of Error

"The trial court erred in not holding that defendant city of Perrysburg's agreement for sanitary sewer service [was] void as unlawful and unconstitutional, or in the alternative, in not severing the illegal promise to pursue annexation from the rest of said agreement."

Basically, this appeal involves two issues: (1) whether the city can precondition extension of sewer services to non-resident users upon agreement to annex their land; and (2) whether the doctrine of equitable estoppel precludes the city from doing so in this particular district because of the city's prior position of not requiring annexation of the land.

The city's power to acquire, construct, own, and operate a public utility within or without its corporate limits had been conferred upon it by the Ohio Constitution. Sections 4 and 6, Article XVIII, Ohio Constitution. The exercise of that power cannot be limited or restricted by the Ohio Legislature so as to require the city to supply services outside its corporate limits. *Fairway Manor, Inc.* v. *Bd. of Commrs. of Summit Cty.* (1988), 36 Ohio St. 3d 85, 521 N.E. 2d 818, paragraph one of the syllabus, and *State, ex rel. McCann,* v. *Defiance* (1958), 167 Ohio St. 313, 4 O.O. 2d 369, 148 N.E. 2d 221, paragraph one of the syllabus. Thus, the city may provide services outside its corporate limits subject to whatever conditions it deems necessary in the exercise of its police powers so long as each condition is not unreasonable, arbitrary, or capricious and bears a legitimate and rational relationship to the health, safety, and welfare of its citizens. *Shipman* v. *Lorain Cty. Bd. of Health* (1979), 64 Ohio App. 2d 228, 233, 18 O.O. 3d 172, 175, 414 N.E. 2d 430, 434; *State, ex rel. Indian Hill Acres, Inc.,* v. *Kellogg* (1948), 149 Ohio St. 461, 37 O.O. 137, 79 N.E. 2d 319, paragraph two of the syllabus. If the city limits the scope and extent of its duty through contract, the city is then bound to supply services to non-residents in accordance with its contract and without discrimination. *Western Reserve Steel Co.* v. *Cuyahoga Heights* (1928), 118 Ohio St. 544, 161 N.E. 920. However, the city is not bound to continue to supply such service to non-residents after the contract expires. *Fairway Manor, Inc., supra,* at 89, 521 N.E. 2d at 822.

The city of Perrysburg, in the case *sub judice,* sought to limit the scope of its obligation to provide sewer services to non-residents by mandating annexation as a condition to receiving service. Such a condition has been held to be a valid exercise of the municipality's police power. *State, ex rel. Indian Hill Acres, Inc.,* v. *Kellogg, supra; Shipman* v. *Lorain Cty. Bd. of Health, supra;* and *Stow* v. *Cuyahoga Falls* (1982), 7 Ohio App. 3d 108, 7 OBR 140, 454 N.E. 2d 561.

Appellees argue, however, that Ordinance 15-85, which required annexation for all new non-resident users, is unlawful and unconstitutional for the following reasons. First, appellees contend that application of the ordinance results in economic duress because appellees must tap into the sewer line under R.C. 6117.51 and 6117.99. These sections give the county board of health the authority to order property owners within a sewer district to con-

nect the premises to the sewer system under certain circumstances. The Wood County Board of Commissioners issued such an order on April 14, 1980. Therefore, appellees were required by law to tap into the sewer system, which would automatically subject them to annexation under Ordinance 15-85.

The elements of the defense of economic duress were set forth in *Bartlett* v. *Richardson Co.* (1927), 27 Ohio App. 263, 270-271, 161 N.E. 403, 405:

"The fear of some impending peril or financial injury, or the mere fact that one acts with reluctance, does not constitute duress. Duress involves illegality, and implies that a person has been unlawfully constrained by another to perform an act under circumstances which prevent the exercise of free will, and it can never constitute fraud or duress to do as and what a person has a legal right to do, whatever the pecuniary consequences may be to those with whom he deals."

A key element to the defense, therefore, is that another unlawfully compels one to do something against his free will. See, also, *Mancino* v. *Friedman* (1980), 69 Ohio App. 2d 30, 36-38, 23 O.O. 3d 27, 31-32, 429 N.E. 2d 1181, 1186-1187.

In the case *sub judice,* the city is requiring appellees to annex in order to receive city sewer services. As noted above, the city can legally impose such a requirement on non-resident users. Therefore, we find that this argument is without merit.

Second, appellees assert that this ordinance constitutes a taking of property without due process of law in violation of Section 16, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

The requirements of due process under the Ohio and United States Constitutions are substantially identical. *In re Appropriation for Highway Purposes* (1957), 104 Ohio App. 243, 4 O.O. 2d 391, 148 N.E. 2d 242. Therefore, our reviews of these two claims are consolidated.

A material interference with private property rights constitutes a taking under Ohio law. *Mansfield* v. *Balliett* (1902), 65 Ohio St. 451, 63 N.E. 86, paragraph two of the syllabus. Such a taking may be by means of regulation which in effect deprives one of the use of his property. However, "[l]aws enacted in the proper exercise of the police power, * * * reasonably necessary for the preservation of the public health, safety and morals, even though they result in the impairment of the full use of property by the owner thereof, do not constitute a 'taking of private property * * *.' " *Pritz* v. *Messer* (1925), 112 Ohio St. 628, 149 N.E. 30, paragraph one of the syllabus. Inasmuch as it is well-settled that the annexation condition to receiving services is a proper exercise of police power, we cannot find that a taking of property existed in the case at hand.

Third, appellees argue that the ordinance violates their constitutional right under Section 1, Article I of the Ohio Constitution to acquire, possess, and protect property. That right, however, is also subject to limitations required to protect the general welfare. *Palmer & Crawford* v. *Tingle* (1896), 55 Ohio St. 423, 45 N.E. 313, paragraphs one and two of the syllabus. Once again, because annexation is a proper exercise of police power, we do not find a violation of this constitutional right is present in this case.

Fourth, appellees contend that the ordinance contravenes their right of equal protection granted by Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution. Again, we

combine our reviews of these two claims inasmuch as the Equal Protection Clauses of both the Ohio and United States Constitutions impose essentially identical limits on governmental classification. *Kinney* v. *Kaiser Aluminum & Chemical Corp.* (1975), 41 Ohio St. 2d 120, 123, 70 O.O. 2d 206, 207-208, 322 N.E. 2d 880, 882.

The purpose of the equal protection guarantee is to ensure that similarly situated persons are treated similarly under the law. *Colgate* v. *Harvey* (1935), 296 U.S. 404, 422-423. This does not prohibit, however, the legislature from making classifications. But, rather, the classifications must not invidiously discriminate against one class in favor of another similarly situated class. *Norvell* v. *Illinois* (1963), 373 U.S. 420, 424; *McLaughlin* v. *Florida* (1964), 379 U.S. 184; and *Harris* v. *McRae* (1980), 448 U.S. 297, 322. The general rule is to presume that the classification is constitutional if it is rationally related to a legitimate end of government. The presumption is lost, however, if the classification infringes upon a fundamental right or is "suspect" because it is not based on a legitimate factor for distinguishing between classes. In the latter case, a higher standard of review is required. *City of Cleburne* v. *Cleburne Living Center, Inc.* (1985), 473 U.S. 432.

In the case *sub judice,* the classification made by the ordinance is created by the fact that the ordinance applies prospectively to new non-resident users after January 15, 1985, and excludes all non-resident users who connected to the system before that date. Therefore, our review is limited to whether there is a rational basis between this classification and the goal to be achieved by the ordinance.

Initially, it must be noted that a statute is not unconstitutional on its face simply because it is underinclusive. So long as there is a rational relationship between those excluded or included and the purpose to be achieved, the statute will be upheld. *New Orleans* v. *Dukes* (1976), 427 U.S. 297. Even if the government chooses a less effective means, the legislative act can still be constitutional if it is rationally related to the purpose to be accomplished. *Massachusetts Bd. of Retirement* v. *Murgia* (1976), 427 U.S. 307. Furthermore, the Equal Protection Clause does not bar a statute from having a beginning or being applied prospectively only. *Califano* v. *Webster* (1977), 430 U.S. 313; *Williams* v. *Walsh* (1912), 222 U.S. 415; and *Sperry & Hutchinson Co.* v. *Rhodes* (1911), 220 U.S. 502. Thus, a grandfather clause does not by itself indicate an arbitrary classification. The statute must still be examined to determine whether some rational justification for it is shown or can be perceived by the court. *United States* v. *Maryland Savings-Share Ins. Corp.* (1970), 400 U.S. 4, 6. Cf. *Mayflower Farms, Inc.* v. *Ten Eyck* (1936), 297 U.S. 266. Whenever there is a declared purpose for making the classification, however, no other reason can be inferred. *Allied Stores of Ohio, Inc.* v. *Bowers* (1959), 358 U.S. 522.

Appellees in the case *sub judice* argue that no rational basis exists for distinguishing between non-resident users before January 15, 1985, and those who sought to connect afterward. In addition, appellees argue that there are less burdensome alternatives available such as raising rates or annexing other property.

The preamble to the ordinance states that the city determined that improvements to the present sewer system were necessary in light of the increasing demands and increasing population within and outside the city which would put an additional strain

on the system. The policy of annexation as a precondition to the extension of service would enable the council to study the growing needs of all of its consumers to ensure adequate service. Clearly, the city seeks to protect a limited resource.

Since the council has determined that the present needs of resident and non-resident users are being met, and that their concern is to future needs, we find that there is a rational basis for distinguishing between users already connected and future users. Although there are alternative choices that may be available to the council to deal with this problem, it is not within the court's power to determine which choice is best. Our role is only to ensure that the choice made is a rational one to accomplish its purpose. Therefore, we do not find that the ordinance deprived appellees of their equal protection rights.

In light of the above, we find that the city of Perrysburg could require annexation as a precondition to supplying sewer services to non-residents. We now turn to the second question in this case of whether it is inequitable to permit the city to do so under the circumstances of this case.

The doctrine of equitable estoppel is derived from the concept in natural law that one cannot change his position once another has acted in reliance thereon. *McGovern* v. *Knox* (1871), 21 Ohio St. 547. As an equitable rule, it may be invoked whenever the facts and circumstances warrant. *Beardsley* v. *Foot* (1863), 14 Ohio St. 414.

There are, however, some general elements applicable in all cases. Four prima facie elements which the plaintiff must set forth are: (1) that the party knowingly made a false representation or concealment of a material fact (or at least took a position contrary to that now taken); (2) that the representation must be made in a misleading manner with the intention or expectation that another would rely on it to act; (3) that the plaintiff actually relied on the representation; and (4) that plaintiff relied to his detriment so much that unless the party is estopped from asserting the truth or a contrary position, plaintiff would suffer loss. See *First Federal S. & L. Assn.* v. *Perry's Landing, Inc.* (1983), 11 Ohio App. 3d 135, 144-146, 11 OBR 215, 225-227, 463 N.E. 2d 636, 646-649. Plaintiff must prove each of these elements by clear and unequivocal proof. *Kroll* v. *Close* (1910), 82 Ohio St. 190, 92 N.E. 29, paragraph one of the syllabus.

Generally, whether equitable estoppel is appropriate is a question of law and fact. However, where the facts are undisputed, it is proper for the court to determine on summary judgment if the facts constitute a case where equitable estoppel is necessary. *McMillen* v. *Willys Sales Corp.* (1962), 118 Ohio App. 20, 23, 24 O.O. 2d 357, 358-359, 193 N.E. 2d 160, 161-162.

If equitable estoppel is deemed to apply, it will bind all parties and those in privity. "Stranger[s] cannot be bound by, nor take advantage of an estoppel," *Kitzmiller* v. *Van Rensselaer* (1859), 10 Ohio St. 63, 64; *McGovern* v. *Knox, supra.* Consequently, an estoppel adheres to the land as a muniment of title which runs with the land to all subsequent title holders. *Douglass* v. *Scott* (1831), 5 Ohio 195, 198-199. Thus, if the predecessor in title could assert a right against another, his successor may do likewise, unless that right has lapsed or has been lost by operation of law. *Bailey* v. *Stedronsky* (1936), 57 Ohio App. 265, 271-272, 26 Ohio Law Abs. 274, 276-277, 10 O.O. 451, 453, 13 N.E.2d 588, 591.

A threshold concern in this case is whether equitable estoppel can be applied to municipalities as well as to in-

dividuals. It is well-settled that when a municipality acts within the scope of its authority, the doctrine can be invoked against the municipality. *Mount Vernon* v. *State, ex rel. Berry* (1905), 71 Ohio St. 428, 451, 73 N.E. 515, 519; *Shapely, Inc.* v. *Norwood Earnings Tax Bd. of Appeals* (1984), 20 Ohio App. 3d 164, 165, 20 OBR 198, 200, 485 N.E. 2d 273, 275, citing *Baxter* v. *Manchester* (1940), 64 Ohio App. 220, 227-228, 18 O.O. 77, 79-80, 28 N.E. 2d 672, 675. However, the city will be bound only by representations authorized to be made by its officers or agents. *Kilko* v. *Cleveland* (App. 1951), 60 Ohio Law Abs. 561, 565, 102 N.E. 2d 476, 478.

The trial court in the case *sub judice* held that prior possessors of the property had been led to believe that utilization of the sewer line would not be conditioned on annexation. Therefore, this right to service under these conditions would run with the land to the appellees herein.

We find, however, that the facts in the case do not warrant application of the doctrine of equitable estoppel. The prior owners of the property had an opportunity to tap into the system by January 1, 1979. By not exercising that right, they waived any right to connect under the conditions then prevailing. When appellees purchased the property, the 1984 agreement was in effect. Although the ordinance was not passed until after the Andreses contracted to purchase the property, they were still on notice that service was subject to city ordinances. We cannot find that any representation of non-annexation was ever made by the city. The mere fact that the city had not required annexation in the past is insufficient to bar it from doing so now.

On consideration whereof, we find that appellant's first and second assignments of error are well-taken and that summary judgment should have been granted in appellant's favor. Consequently, we find appellees' first and second cross-assignments of error not well-taken.

Therefore, this court finds that the judgment of the Wood County Court of Common Pleas should be reversed. We hereby order appellees to pay the court costs of this appeal.

*Judgment accordingly.*

CONNORS, HANDWORK and GLASSER, JJ., concur.