BAKIES ET AL., APPELLANTS, ET AL. *v.* CITY OF PERRYSBURG ET AL., APPELLEES.

[Cite as *Bakies v. Perrysburg,* 108 Ohio St.3d 361, 2006-Ohio-1190.]

(No. 2004–1923—Submitted October 25, 2005—Decided March 29, 2006.)

O'DONNELL, J.

{¶ 1} The principal issue presented in this appeal concerns whether a municipality may, through either a written agreement or by ordinance, require extraterritorial water and sewer customers to annex their property to the municipality or face termination of their utility service. Gregory and Karen Bakies and Richard Smith, residents of the Willowbend subdivision in Perrysburg Township, Ohio, appeal from a decision of the Wood County Court of Appeals that affirmed the judgment of the trial court denying their request for an injunction to prevent the city of Perrysburg from terminating their water and sewer services because they refused to annex their property to the city of Perrysburg.

{¶ 2} During the 1970s and 1980s, the city of Perrysburg, located in Wood County, which operated its own water district, contracted with the Wood County

Board of Commissioners to provide water and sewer services to unincorporated areas within the county.

{¶ 3} In 1975, the Cavalear Development Company sought to develop Willowbend subdivision, a proposed upscale residential development in Perrysburg Township, adjacent to the city of Perrysburg. In order to provide water and sewer service to Willowbend, Cavalear contracted with Wood County to pay for extension of a water line. The contract further specified that the water would be provided subject to the rules and regulations of the city of Perrysburg.

{¶ 4} In his brief filed in our court, Smith stated that he purchased property and built a home in Willowbend in 1978, Perrysburg extended water and sewer services to his property without requiring any written agreement, and he has continuously received such services, paying extraterritorial rates since that time.

{¶ 5} Subsequent to that arrangement, Perrysburg began to enact ordinances with respect to its water service. In 1983, it provided by ordinance that following that date, extraterritorial customers had to agree to petition for annexation of their property immediately or agree to do so when their property became contiguous to any part of the city.

{¶ 6} Then, in 1988, because of large population growth in areas adjacent to the city and in an effort to achieve organized growth, Perrysburg declared its intention to annex all adjacent urbanized areas and all adjacent low-density areas when it became reasonably certain that urbanization of those areas would occur. To carry out this policy, Perrysburg mandated that all current extraterritorial customers execute an agreement to annex their property and exert all efforts to obtain annexation. Smith never took any action in response to any of this legislation.

{¶ 7} Ten years later, in 1998, Gregory and Karen Bakies purchased a home in the Willowbend subdivision and signed a contract for water service with the city of Perrysburg in which they agreed to cooperate with Perrysburg's annexation plans or face termination of their service.

{¶ 8} Subsequently, the city of Perrysburg and Perrysburg Township agreed to designate areas where the township would consent to annexation. Following that agreement, in June 2002, Perrysburg mailed letters to approximately 260 property owners in Perrysburg Township requesting that they sign a petition for annexation pursuant to either a previously signed agreement for water and sewer service or pursuant to applicable ordinances of the city of Perrysburg. The Bakieses received a letter, but refused to sign the annexation petition, and as a result, Perrysburg notified them that their water and sewer service would be terminated. Smith also refused to sign and received a similar notice of termination of his service.

{¶ 9} The Bakieses filed a complaint in common pleas court, seeking injunctive relief to prevent Perrysburg from terminating their water and sewer services; subsequently, they filed an amended complaint adding Smith as an additional party.

{¶ 10} The trial court conducted a preliminary hearing in which Gregory Bakies testified that he had reluctantly signed an agreement to annex his property upon the city's request at the time he purchased his home. Smith, however, testified that he could not recall signing such an agreement. Perrysburg offered the testimony of its city administrator regarding its annexation policy.

{¶ 11} Following that preliminary hearing, the court granted a preliminary injunction preventing Perrysburg from terminating water or sewer service for 60 days and scheduled the matter for further proceedings.

{¶ 12} Perrysburg thereafter answered the amended complaint and counterclaimed, seeking a declaration as to the enforceability of the Bakieses' agreement and an order compelling them to immediately sign an annexation petition. It also moved for summary judgment and submitted a deposition of Perrysburg Mayor Jody Holbrook describing the city's plans to annex portions of Perrysburg Township. Several factors, including an agreement with Perrysburg Township, proximity to the city's corporation limits, tax revenue, and the city's ability to provide services more cost-effectively, influenced which properties it selected for annexation. The mayor also testified that Perrysburg would benefit because the annexations would generate revenue for the city by increasing the city's tax base, which would far exceed the revenue Perrysburg gained from selling water. He further testified that township residents would also benefit from the annexations because the city of Perrysburg could provide better and more effective services for residents than the township, as evidenced by its parks, recreation, and fire and police services, among others.

{¶ 13} Several months later, the court granted Perrysburg's motion for summary judgment, declared the Bakieses' contract for delivery of water and sewer services valid and enforceable, and ordered the Bakieses and Smith to sign the annexation petition within 60 days.

{¶ 14} The homeowners appealed to the Sixth District Court of Appeals, which affirmed the judgment of the trial court as to the enforceability of the Bakieses' agreement; it also held that by continuing to receive water after 1982, Smith implicitly agreed to be governed by the rules of the division of water; and it determined that Perrysburg could lawfully terminate water service if the homeowners failed to consent to annexation of their property to Perrysburg.

{¶ 15} The homeowners appealed to this court, and we granted discretionary review. They have advanced three propositions of law for our consideration: the

Bakieses argue that while a municipality may impose conditions on the *extension* of water service to extraterritorial customers, it may not require annexation as a condition of *continued* service for those already being serviced; Smith asserts that he is a party to a 1978 oral agreement with the city of Perrysburg and that the terms of that contract may not be unilaterally changed by Perrysburg; finally, they contend that a municipality's conditions for the sale of water to extraterritorial customers must not be unreasonable, arbitrary, or capricious and must bear a rational relationship to the health, safety, and welfare of its citizens.

### The Bakieses' written contract

{¶ 16} The Bakieses complain that Perrysburg cannot require consent to annexation as a condition of *continued service* for existing extraterritorial customers, urging that the Ohio Supreme Court has permitted municipalities to require annexation only for the *extension* of water service to extraterritorial customers. Perrysburg, however, contends that absent a contractual obligation, a municipality has no duty to continue to supply water and sewer services to extraterritorial customers.

{¶ 17} Thus, the issue presented here relates to whether a municipality that has historically provided water and sewer service for extraterritorial customers is permitted to require annexation of the extraterritorial property as a condition of continued service to those customers.

{¶ 18} Section 6, Article XVIII, of the Ohio Constitution authorizes a municipality to sell surplus water or sewer services outside its territorial boundaries. Further, in *State ex rel. Indian Hill Acres, Inc. v. Kellogg* (1948), 149 Ohio St. 461, 37 O.O. 137, 79 N.E.2d 319, we considered Cincinnati's obligation to extraterritorial consumers of city water and held that in the absence of a contract, "the municipality may sell and dispose of its surplus products in such quantities and in such manner as the council thereof determines to be in the best interest of the municipality and its inhabitants." Id. at paragraph three of the syllabus.

{¶ 19} In addition, in *Fairway Manor, Inc. v. Summit Cty. Bd. of Commrs.* (1988), 36 Ohio St.3d 85, 89, 521 N.E.2d 818, we stated:

{¶ 20} "Municipally owned public utilities have no duty to sell their products, including water, to extraterritorial purchasers absent a contractual obligation. *State, ex rel. Indian Hill Acres, Inc., v. Kellogg* (1948), 149 Ohio St. 461, 37 O.O. 137, 79 N.E.2d 319, paragraph three of the syllabus. Even where there is a contract, but the contract provides no termination date, either party to the agreement may terminate it upon reasonable notice. *Grandview Heights v. Columbus* (1963), 174 Ohio St. 473, 23 O.O.2d 117, 190 N.E.2d 453, paragraph two of the syllabus. Thus, it can be seen that a municipality does not assume a duty

to continue supplying water in perpetuity to extraterritorial customers merely by virtue of having once agreed to supply it. * * * The municipality has the sole authority to decide whether to sell its water to extraterritorial purchasers. *Indian Hill Acres, supra,* paragraph two of the syllabus."

{¶ 21} In *Indian Hill, Fairway Manor,* and *Grandview Hts.,* we recognized that a municipality has no obligation to continue to provide water to extraterritorial customers in the absence of contract. Although the Bakieses attempt to distinguish a municipality's authority to impose conditions at the time it *extends* service from its ability to impose conditions upon *continued* service, our precedent does not make that distinction. We therefore reaffirm the principle that absent a contractual obligation, a municipality has no duty to continue to supply water to extraterritorial customers. Further, the Bakieses signed a written contract with Perrysburg agreeing to cooperate with annexation or face termination of their service.

{¶ 22} Accordingly, we conclude that a contract between a municipality and an extraterritorial water and sewer customer in which the customer agrees to annex property or face termination of service is a valid and enforceable contract.

## Smith's oral contract

{¶ 23} Smith claims that Perrysburg has provided him with water and sewer service since 1978 pursuant to an oral agreement whereby Perrysburg provides service conditioned on timely payment therefor and that Perrysburg cannot now unilaterally alter the terms of that agreement. Perrysburg contends, however, that Smith has failed to prove the existence of any such agreement.

{¶ 24} Thus we are called upon to consider the arrangement under which Smith receives services from Perrysburg.

{¶ 25} Smith urges that the course of conduct existing between himself and the city of Perrysburg for more than 27 years arises from an oral contract. It is undisputed that he built his home in Willowbend in 1978 and has received water and sewer services since then.

{¶ 26} After our review, we agree with the court of appeals that the record does not evidence the terms of any oral contract involving his water and sewer services. It does, however, reflect that Perrysburg enacted ordinances in 1983 and 1998 notifying extraterritorial users of conditions for continued receipt of services, and Smith's continued receipt of services after those enactments subjected him to the provisions of those ordinances.

{¶ 27} In *Fairway Manor,* 36 Ohio St.3d 85, 521 N.E.2d 818, we held that in the absence of a contract, a municipality has no duty to supply water or sewer services to extraterritorial customers. Accordingly, because Smith has not proven the existence of a contract, Perrysburg has no duty to supply Smith with

water and sewer services, and he is obligated to comply with the rules and ordinances of Perrysburg.

## Constitutionality of Perrysburg ordinances

{¶ 28} Finally, the Bakieses and Smith urge that conditions imposed by Perrysburg ordinances for the sale of water to extraterritorial users are unreasonable, arbitrary, and capricious and lack a rational relationship to the health, safety, and welfare of its citizens. Perrysburg first responds that it has no duty to prove that its annexation policy bears a rational relationship to the health, safety, and welfare of its citizens, and it further maintains that the record demonstrates a reasonable basis for it to require annexation as a condition of continued service to extraterritorial customers.

{¶ 29} Thus we are asked to consider whether the Perrysburg ordinances imposing conditions on continued service to extraterritorial customers are unreasonable, arbitrary, or capricious and whether its ordinances bear a rational relationship to the health, safety, and welfare of its citizens.

{¶ 30} Section 4, Article XVIII of the Ohio Constitution empowers any municipality to acquire, construct, own, lease, and operate any public utility within or without its corporate limits to serve the municipality and its inhabitants. Section 6, Article XVIII further authorizes a municipality owning or operating a public utility to sell and deliver surplus utility product to others.

{¶ 31} Appellate courts of this state have examined this issue in similar cases. In *Shipman v. Lorain Cty. Bd. of Health* (1979), 64 Ohio App.2d 228, 18 O.O.3d 172, 414 N.E.2d 430, in which the city of Oberlin required annexation as a condition of receiving sewer service, the court concluded that the city's reasons for its policy—regulating growth and increasing its tax base—constituted legitimate aims of the ordinance and that the city used reasonable means to accomplish its objectives.

{¶ 32} Also, in *Andres v. Perrysburg* (1988), 47 Ohio App.3d 51, 546 N.E.2d 1377, the court upheld an ordinance requiring property owners to sign annexation agreements in order to have sewer service extended to their properties, stating that the city could provide extraterritorial services "subject to whatever conditions it deems necessary in the exercise of its police powers so long as each condition is not unreasonable, arbitrary, or capricious and bears a legitimate and rational relationship to the health, safety, and welfare of its citizens." Id. at 53, 546 N.E.2d 1377.

{¶ 33} In accord with the reasoning of the other courts that have considered these similar issues, we conclude that ordinances requiring extraterritorial customers to agree to annexation in exchange for continuation of services are a valid exercise of the police power of a municipality, that such a requirement is not

unreasonable, arbitrary, or capricious, and that it bears a rational relationship to the health, safety, and welfare of the municipality's citizens. The homeowners here have failed to advance any basis upon which we could conclude otherwise.

{¶ 34} Perrysburg, on the other hand, has demonstrated a legitimate basis for selecting the homes owned by the Bakieses and Smith for annexation—including tax revenue, proximity to Perrysburg's corporate limit, and its prior agreement with Perrysburg Township. Perrysburg further demonstrated that annexation would create a larger tax base, which would increase its general revenue and reduce the strain on city services caused by adjacent urbanized areas of Perrysburg Township. And it would benefit township residents by providing better and more cost-effective services such as parks, recreation, and police and fire services to residents.

{¶ 35} In *Indian Hill,* 149 Ohio St. 461, 37 O.O. 137, 79 N.E.2d 319, we held that in the sale and delivery of the surplus product of a municipally owned public utility to extraterritorial customers, the council of the municipality has the power to determine the terms on which the product will be sold, restricted only by pertinent constitutional and statutory limitations. Today, we reaffirm that holding. Accordingly, the positions advanced by the Bakieses and Smith are not well taken, and the judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and SADLER, JJ., concur.

LISA SADLER, J., of the Tenth Appellate District, sitting for LANZINGER, J.

---

Rohrbachers, Light, Cron & Trimble Co., L.P.A., David J. Rohrbacher, and Todd M. Zimmerman, for appellants.

Spengler Nathanson, P.L.L., Theodore M. Rowen, and Lisa E. Pizza; and Peter D. Gwyn, for appellee city of Perrysburg.

Byron & Byron Co., L.P.A., Barry M. Byron, and Stephen L. Byron; and John Gotherman, urging affirmance for amicus curiae Ohio Municipal League.

Richard C. Pfeiffer Jr., City Attorney, and Daniel W. Drake, Chief Counsel, urging affirmance for amicus curiae city of Columbus.

Andrew J. Burkholder, Deputy Law Director, urging affirmance for amicus curiae city of Springfield.