DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, in which the trial court denied appellant's motion for summary judgment and granted appellees' cross-motion for partial summary judgment. For the reasons that follow, we affirm the judgment of the trial court.
On appeal appellant sets forth the following three assignments of error:
 "I. THE TRIAL COURT ERRED WHEN IT FOUND THAT DEFENDANT-APPELLEES WERE THIRD PARTY BENEFICIARIES OF THE 1973 CONTRACT BETWEEN THE CITY OF SYLVANIA AND LUCAS COUNTY.
 "II. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE 1973 CONTRACT BETWEEN THE CITY OF SYLVANIA AND LUCAS COUNTY REQUIRED THE CITY TO PROVIDE APPELLEES WITH SANITARY SEWER SERVICE.
 "III. THE TRIAL COURT ERRED WHEN IT FOUND THE PROPERTY OWNERS' AGREEMENTS TO ANNEX PROPERTY WERE UNENFORCEABLE."
This case is before this court as a result of a dispute between appellant, the city of Sylvania, and appellees, Gregory Huffman, Michael and Valerie Daley, Michael and Angela Calandra, David Angel, Diane M. Tolson-Kelley, Kurt and Mary Oates, Carey and Teresa Stansbury, Robert W. Amstutz, Geraldine Bush, William and Shirley Brandish, Julianne Etzel, Darrell and Sara Everly, Dorothy C. Hamilton, Debra S. Hennie, Robert and Marian Herman, Jeffrey and Kay Krempee, Donald and Delphine Lubinski, Shirley A. Matthews, Roger and Joanne Scally, Richard C. Schlageter, David and Evelyn Tomaszewski, and Wicklow Wood Homeowners Association. The underlying dispute arose due to appellees' refusal to voluntarily petition for annexation to the city of Sylvania, as required by certain annexation covenants purportedly executed in exchange for the provision of water and sewer services.
The following facts are relevant to the issues raised on appeal. In 1973, appellant entered into an agreement with Lucas County, in which the county agreed to provide "transportation, treatment and disposal of sanitary sewage and wastes from the Sylvania Service Area" through a series of connecting sewer lines to the Maumee River Wastewater Treatment Plant, which is owned and operated by the county. The Sylvania Service Area, as defined in the 1973 agreement, included all of the city of Sylvania and certain unincorporated areas of Sylvania Township, including property owned by appellees.
The 1973 agreement provided for Lucas County "to construct an expansion of the wastewater treatment plant and an extension of the trunk sewer to the proposed point of connection with the CITY's trunk sewer, McCord Road at Central Avenue * * *;".
In return, appellant agreed "to construct trunk sewers to the connection point on McCord Road at Central Avenue, and * * * to include requested capacity in its sewers for a portion of the COUNTY wastewater to flow therein to the COUNTY Trunk Sewer * * *;".
Pursuant to Section 2 of the 1973 agreement, appellant "promise[d] and agree[d] to transport and deliver to the point of connection on the COUNTY trunk sewer * * *, all of the sanitary sewage and liquid wastes originating in the Sylvania Service Area, * * *". The 1973 agreement also set forth the respective duties of the county and appellant with regard to personnel, capacity, costs of operating and maintaining the sewer system, and charging and collection of fees for use of the sewer system. In addition, Section 10(B) of the agreement stated:
 "any completed sanitary sewer improvement owned by the COUNTY and located within any unincorporated part of the Sylvania Service Area that may hereafter be annexed to the CITY shall, upon such annexation, be conveyed by the COUNTY to the CITY subject to the right of the COUNTY to the joint use of such sewer improvement. * * *"
In 1989, appellant and the county executed a written supplement to the 1973 agreement, in which they agreed to expand the Sylvania Service Area by an additional 160 acres of township land. On February 22, 1995, appellant passed Emergency Resolution No. 4-95, which provided, in relevant part:
 "[H]ereafter those owners of real estate situated in the Economic Development Area shall be required to enter into an agreement with the City of Sylvania to annex their real estate to the City of Sylvania prior to receiving permission to connect their real estate to the City of Sylvania Sanitary Sewer System or water system."
The Economic Development Area, which is part of the Sylvania Service Area, was defined as land lying "west of the City in Sylvania Township and north of Sylvania Avenue." In May 1995, Sylvania's former mayor, James Seney, issued a memorandum in which he stated that, effective May 15, 1995, "no sewer tap permit is to be issued in the Sylvania Sewer District or Sylvania Water District (unless restricted by contract) outside the city limits of Sylvania without first obtaining the signature of the property owner on an Annexation Covenant.
"This includes all areas to the east, west, north and south and is intended to include all residential, commercial applicants, schools, and subdivisions not inside the city limits but in the Sylvania Sewer or Water Service area. * * *"
The annexation covenants signed by appellees provided that, in exchange for "permission to obtain water service or sanitary sewer service" the property owner must agree to:
 "annex the property herein described to the City when it is legally permissible for the Property Owner to do so; To sign a petition for the annexation * * * in conjunction with others who have also signed the petition for the annexation * * *; not to withdraw the Property Owner's signature from an annexation petition requesting the annexation of Property Owner's herein described property * * * and not to oppose any annexation petition requesting the annexation of the Property Owner's herein described property to the City * * *."
The only stated exceptions to the annexation covenant requirement were the Sylvania Township Hall, the Township Fire Station and the Township Police building. In July 1995, the Sylvania Service Area was further expanded to include an additional 440 acres of township land.
Eventually, appellees' properties became contiguous to the city boundaries, and appellant asked them to petition for annexation in accordance with the terms of their respective annexation covenants. Some of the covenants had been executed by developers who eventually sold property to individual appellees, and some were signed by appellees at the time their property was purchased. In any case, as a result of appellees' refusals to petition for annexation, appellant filed suit in the Lucas County Court of Common Pleas to compel annexation. Those cases eventually were consolidated into one case in the trial court, and will be treated as one case for purposes of this appeal.
On July 17, 2000, appellant filed a motion for summary judgment, in which it asked the trial court to declare that the annexation covenants were valid and enforceable, and to compel appellees to permit annexation to take place. On May 31, 2001, appellees filed a counter-motion for partial summary judgment, in which they asked the trial court to find that the covenants were unenforceable. Both parties submitted written briefs and affidavits in support of their respective motions.
On October, 16, 2001, the trial court filed a judgment entry in which it found that appellees were third party beneficiaries of the 1973 agreement because the mutual promises made by the County and appellant were "directly for the benefit of the township and its residents, including [appellees] property owners." The trial court also found that Section 2 of the 1973 agreement unambiguously required appellant to provide sewer services within the Sylvania Service Area, which included the property owned by appellees. Accordingly, the court found that, because appellant already had a duty to provide sewer services to appellees, it offered no new consideration in exchange for the annexation covenants. Finally, the court found that, because of the preexisting duty, the promises made in the annexation covenants did not "touch and concern the land" in question, and therefore the annexation covenants could not be enforced against those appellees who were subsequent purchasers from individuals or developers who had signed the covenants.
Based on the above findings, the trial court denied appellant's motion for summary judgment and granted appellees' motion for partial summary judgment. The court found there was no just reason for delay of an appeal pursuant to Civ.R. 54(B). Thereafter, a timely notice of appeal was filed in this court by appellant.
Appellant collectively asserts in its three assignments of error that the trial court erred by denying its motion for summary judgment and granting appellees' motion for partial summary judgment. In reviewing the granting or denial of a motion for summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is not a genuine issue as to any material fact" and, after construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).
Appellant asserts in its first assignment of error that the trial court erred by finding that appellees are third party beneficiaries to the 1973 agreement. In support thereof, appellant argues that the city and Lucas County were the intended beneficiaries of the 1973 agreement, and appellees were, at best, incidental beneficiaries thereto. Appellant further argues that appellees, as private citizens, do not have the right to enforce the terms of a contract between two governmental entities, absent a clear manifestation that the agreement was made and entered into with the intent to bestow such a right.
It is undisputed that, under the Ohio Constitution, a city has the power to acquire, construct, and operate a public utility within or without its corporate limits. Andres v. City of Perrysburg (1988),47 Ohio App.3d 51, 53. Further, a city may condition the provision of water and sewer services outside its limits as it deems necessary to do so, provided that the conditions are not unreasonable, arbitrary, or capricious and bear a legitimate and rational relationship to the health, safety, and welfare of its citizens. Id. However, if the duty to provide services is altered by contract, the city is bound to supply services in accordance with that contract. Id.
The threshold issue in this case is not the enforcement of the 1973 agreement by appellees, but rather the recognition of the purpose of that agreement. As previously stated, the 1973 agreement provided that the county would expand and improve its wastewater treatment plant and extend the trunk sewer to McCord Road and Central Avenue. In return, appellant contracted to construct sewer lines in the Sylvania Service Area that would connect with the county system and have the capacity to transport and deliver to the treatment plant "all of the sanitary sewage and liquid wastes originating in the Sylvania Service Area * * *".
At that time, the area was unincorporated and sparsely populated. Although the contract between appellant and the county provided for tap fees, usage charges, maintenance, and other rules and regulations relating to appellant's agreement to provide the services, it did not mention annexation as a pre-condition for the provision of those services. The only reference to annexation is in Section 10(B) of the 1973 agreement, which sets forth which party would own specific sewer lines in the event of future annexation by the city. The method of such future annexation is not mentioned in the agreement.
It is obvious from a review of the record that, in making the 1973 agreement, the county expected to receive collection and transportation of sewage produced by the residents of the unincorporated portions of the Sylvania Service Area to the county trunk sewer line, and the city agreed to provide such services. Accordingly, it would frustrate the purpose of the 1973 agreement to find that appellees, who own property in the designated service area, were not intended beneficiaries under the terms of the agreement to provide such services. See Bd. of Trumbull Co.Commn. v. City of Warren (2001), 142 Ohio App.3d 599, 603. Therefore, the trial court did not err by finding that appellees were intended beneficiaries of the 1973 agreement. Accordingly, appellant's first assignment of error is not well-taken.
Appellant asserts in its second assignment of error that the trial court erred by finding that Section 2 of the 1973 agreement creates a duty on the part of appellant to provide sewer services to appellees without conditioning the provision of services on future annexation. In support thereof, appellant argues that, pursuant to the 1973 agreement, the city agreed to transport sewage generated in the Sylvania Service Area to the county trunk sewer and, in return, the county agreed that the city could "charge whatever rates it wished * * * and that such service was extended subject to whatever sewerage regulations the City adopted."
It is well-settled in Ohio that, "[i]n construing the terms of any contract, the principal objective is to determine the intention of the parties." Hamilton Ins. Serv. v. Nationwide Ins. Cos. (1999),86 Ohio St.3d 270, 273. "When the terms included in an existing contract are clear and unambiguous, we cannot create a new contract by finding an intent not expressed in the clear and unambiguous language of the written contract." Id., citing Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 246. In addition, where there is an existing contract for water and sewer services, "[c]ourts must presume that the language of a contract between competent persons accurately reflects the intentions of the parties." Fairway Manor, Inc. v. Bd. of Commrs. of Summit Cty. (1988), 36 Ohio St.3d 85, 87, citing Kelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
In this case, it is undisputed that, for almost twenty years after the 1973 agreement was executed, the Sylvania Service Area was expanded, sewer lines were extended into Sylvania Township, assessments were charged, and tap fees and usage fees were collected. Later, when it became obvious that significant economic growth was taking place, appellant began requiring residents of the unincorporated service area to sign annexation covenants in exchange for water and sewer services. In addition, as previously noted, the 1973 agreement does not grant appellant the specific right to condition the extension of water and sewer services in the unincorporated portions of the Sylvania Service Area upon the signing of an annexation covenant.
Upon consideration of the foregoing, we find that the trial court did not err by presuming that the agreement clearly and unambiguously required appellant to provide the Sylvania Service Area with sewer services, without granting appellant the right to condition such services on the signing of an annexation covenant. Therefore, we find that the language of the 1973 agreement accurately reflected the intent of the parties, Appellant's second assignment of error is not well-taken.
Appellant asserts in its third assignment of error that the trial court erred by finding that the annexation covenants signed by appellees were unenforceable. In support thereof, appellant argues that the benefits, i.e., sewer and water services, extended by the city in exchange for the annexation covenants constitute "sufficient consideration to support a contract." Appellant further argues that the covenants created equitable servitudes that run with the land and, as such, are binding on those appellees who purchased property from developers who executed annexation covenants.
A valid contract requires the existence of an offer, acceptance, and valid consideration. Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79. "Generally, consideration necessary to support a contract may consist of either a detriment to the promisee or a benefit to the promisor."Crocker v. Hood (1996), 113 Ohio App.3d 478, citing Ford v. TandyTransp., Inc. (1993), 86 Ohio App.3d 364, 384. However, the performance of a duty one is already bound to perform cannot serve as consideration for a contract. George v. First American Bank (Aug. 14, 1991), Lawrence App. No. 1973, citing Shannon v. Univ. Mtg. Discount Co. (1927),116 Ohio St. 609, at paragraph three of the syllabus.
We have previously determined that appellant had a duty pursuant to the terms of the 1973 agreement to provide water and sewer services to appellees. Accordingly, no new consideration was extended by appellant to appellees in exchange for the annexation covenants, and they are not legally enforceable. George, supra. In addition, we agree with the trial court's conclusion that the covenants do not run with the land since they do not provide a benefit to the use or enjoyment of the land beyond those benefits already enjoyed by appellees as a result of the 1973 agreement. Accordingly, they cannot constitute an equitable servitude. See City ofPerrysburg v. Koenig (Dec. 8, 1995), 6th Dist. App. No. WD-95-011. Appellant's third assignment of error is not well-taken.
Upon consideration of the foregoing, this court finds that there remain no genuine issues of material fact and, construing the evidence most strongly in favor of appellees, reasonable minds can only conclude that appellant is not entitled to summary judgment as a matter of law, and appellees are entitled to partial summary judgment as a matter of law. The judgment of the Lucas County Court of Common Pleas is affirmed.
Having upheld the trial court's finding that the annexation covenants are unenforceable, we hereby remand this case to the trial court for further proceedings consistent with this Decision and judgment entry. Court costs of these proceedings are assessed to appellant, the city of Sylvania.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., Melvin L. Resnick, J., and James R. Sherck, J., CONCUR.